Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release of Claims, along with all exhibits hereto ("the Agreement"), is made and entered into by and among Defendants Vanguard Home Care, LLC, VHS of Illinois, Inc., Vanguard Health Systems, Inc., and Tenet Healthcare Corporation, and all of its and their past, present, and future parents, subsidiaries, companies, divisions, officers, agents and corporate affiliates, and other current or former related entities thereof (collectively, "Defendants" or "Vanguard") and Scharmaine Davis ("Named Plaintiff"), on behalf of herself and all former employees who have asserted claims against Defendants in the litigation styled *Davis, et al. v. Vanguard Home Care, LLC, et al.*, Case No. 16-cv-7277 (N.D. Ill.) (the "Litigation"), specifically, Jacqueline Maberry, Leonore Augustine, Ninetta Fiala, Ana Vaia, Annamarie Martin, Coreen Reavy, Grant Chessman, Darlene Bingham, Emily Clarke, Rosemarie Kirchner, Deborah Krukowski, Richard Signe, Nora Barry, Darlene Boron Ris, Jaison Chahwala, Danielle Finnerty, John Gearhart, and Edward Morone (together with Named Plaintiff, the "Plaintiffs") (together with Defendants, the "Parties").

## I.    RECITALS

1.1        Plaintiffs have made certain allegations concerning Vanguard's alleged misclassification of home health registered nurses, physical therapists, and occupational therapists (collectively, "Clinicians") as exempt from the overtime requirements of the FLSA and IMWL and failure to pay them for overtime hours worked. (Am. Compl., ECF No. 55.) In addition, the Named Plaintiff asserts an individual retaliation claim under the FLSA based on her allegation that Vanguard terminated her employment as a result of filing this Litigation. (*Id.*) Vanguard has denied and continues to deny, specifically and generally, the claims asserted in the Litigation, and any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims

alleged in the Litigation. Vanguard maintains that Plaintiffs and all other individuals who provided services to Vanguard as Clinicians always have been properly classified as exempt employees, were paid properly and that no overtime of any kind is owed to them. Vanguard further denies it retaliated against Named Plaintiff and maintains she was lawfully separated.

      1.2      On August 23, 2016, Named Plaintiff moved for conditional certification of the Litigation as a collective action under the FLSA. (ECF No. 22.) On September 6, 2016, while Plaintiff's Motion for Conditional Certification was pending, Defendants moved to dismiss Plaintiffs' claims and compel compliance with applicable arbitration agreements. (ECF No. 30.) The Court denied Defendants' motion on November 22, 2016, basing its decision on the Seventh Circuit's opinion in *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016), which held that agreements that prohibit class litigation and require individual arbitration violate the National Labor Relations Act. (ECF No. 54.) On December 5, 2016, Defendants appealed the Court's order to the Seventh Circuit. (ECF No. 59.) The Seventh Circuit then stayed the appeal pending ruling by the United States Supreme Court in *Epic Systems*.

      1.3      On May 21, 2018, the United States Supreme Court reversed the Seventh Circuit opinion in *Epic Systems.* Thereafter, the Seventh Circuit remanded this Litigation for further proceedings consistent with the *Epic Systems* opinion. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). On remand, and pursuant to the Parties' July 12, 2018 Joint Position Paper on Effect of *Epic Systems* (ECF No. 72), the Court entered an Order dated July 13, 2018: (1) compelling Named Plaintiff to pursue her claims, if any, in arbitration on an individual basis; (2) staying Named Plaintiff's individual FLSA and IMWL claims pending completion of that arbitration; and (3) dismissing without prejudice the FLSA claims of the Opt-In Plaintiffs who had filed consents to sue with the court, provided that should any of the opt-in Plaintiffs pursue their

2

FLSA claims in arbitration on an individual basis in accordance with the FTP within 60 days of the Order, such FLSA claims would be tolled as of the date they filed their respective consents to sue with the court. (ECF No. 73.)

    1.4        The Parties thereafter agreed to mediate Plaintiffs' claims collectively. To facilitate settlement discussions, Defendants agreed to continue to toll the statutes of limitations for the claims of each Plaintiff. In connection with the agreement to mediate, Defendants produced, on a confidential basis, extensive payroll records and other employment data, including employee productivity data from Defendants' electronic medical record software, applicable to Plaintiffs. Plaintiffs' counsel and counsel for Defendants further analyzed the applicable law as applied to the facts discovered regarding the allegations of Plaintiffs, Vanguard's defenses thereto, and the damages claimed by Plaintiffs.

    1.5        On September 26, 2018, the Parties participated in a full-day mediation overseen by Chief Seventh Circuit Mediator Joel Shapiro. Although the Parties made progress at mediation, they did not reach a resolution. After continuing negotiations with Mr. Shapiro's assistance and independently over several months, the Parties were able to settle their claims as set forth in this Agreement.

    1.6        The Parties and their counsel have considered that under the circumstances and in light of the costs and risks of arbitration, their respective interests are best served by compromise, settlement and dismissal of the Litigation with prejudice and have concluded that the terms of this Agreement are fair, reasonable and adequate.

    1.7        Plaintiffs' counsel have conducted a thorough investigation of the facts and have diligently analyzed and evaluated the merits of each Plaintiff's claims. Plaintiffs' counsel also have taken into account the uncertain outcome and the risk of individual arbitration of each

Plaintiff's claims, as well as the difficulties and delays inherent in arbitration and the likelihood of protracted appellate review. Based upon their evaluation of these and other factors, and recognizing the substantial risks of arbitration, including the possibility that arbitration or Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, Plaintiffs' counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and in the best interest of the Plaintiffs in light of all known facts and circumstances. For purposes of this Agreement, Plaintiffs' counsel also have determined that the Agreement procedures described herein are superior to all other available methods for the fair and efficient resolution of this controversy.

1.8     Vanguard vigorously contests the allegations in the Litigation and denies that it committed any wrongful action or violation of law. It nonetheless believes that further litigation and arbitration with respect to Plaintiffs would be protracted, expensive, and contrary to its best interests. Substantial amounts of time, energy, and other resources have been devoted and, absent settlement, will continue to be devoted to Vanguard's defense of Plaintiffs' claims. In light of these realities, Vanguard believes that the settlement memorialized in this Agreement is the best way to resolve the disputes among the Parties while minimizing its own further expenditures.

1.9     The Parties understand and agree that nothing contained herein, nor the consummation of this Agreement, is to be construed as or deemed an admission of liability, culpability, negligence or wrongdoing on the part of any Party. All Parties have entered into this Agreement with the intention to avoid further disputes and litigation based on disputed facts and allegations, and to avoid the costs and risks of arbitration and further litigation to all Parties. This Agreement, and any communications, papers, or orders related to this Agreement, are settlement documents and shall be inadmissible in evidence in any proceeding. The preceding sentence shall

not apply to an action or proceeding to approve, interpret or enforce this Agreement.

      1.10      The Parties agree to cooperate and take all reasonable steps necessary and appropriate to obtain judicial approval of this Agreement, to effectuate all aspects of this Agreement, and to dismiss this action with prejudice upon approval.

## II.    PAYMENT AND DISTRIBUTION

      2.1      The Parties have reached an understanding pursuant to which Defendants shall provide a total of Two Hundred and Forty Thousand Dollars ($240,000.00) (the "Gross Settlement Amount") to resolve all claims, whether asserted or unasserted, of the Plaintiffs under the federal Fair Labor Standards Act, Illinois Minimum Wage Law, Illinois Wage Payment and Collection Law, common law or the wage and hour law(s) of any other state that may apply to Plaintiffs' claims. This Gross Settlement Amount is inclusive of all attorneys' fees, costs, and interest, such that Defendants' settlement liability, other than Defendants' share of payroll taxes, shall not exceed $240,000.00 under any circumstances.

      2.2      Plaintiffs' counsel provided details regarding how the Gross Settlement Amount shall be allocated. Said allocations are listed in the attached Exhibit A. Defendants have no objection to these allocations.

      2.3      Plaintiffs' counsel shall receive, subject to Court approval, Ninety-Three Thousand, Six Hundred Dollars ($93,600.00) in full and complete settlement of all claims for attorneys' fees and Nine Hundred and Eighteen and 27/100 Dollars ($918.27) in reasonable out-of-pocket costs associated with the Litigation and the Released Claims set forth in this Agreement. This amount is for attorneys' fees and costs and will be reported to the Internal Revenue Service on a Form 1099. Plaintiffs' counsel shall provide Defendants with a completed and fully-executed IRS Form W-9. Plaintiffs' counsel is responsible for all federal, state, and local tax liabilities that

5

DocuSign Envelope ID: 6321D8A5-FC62-4393-B911-B9DD13279D2F

may result from the payment of such attorneys' fees, and Defendants shall bear no responsibility for such tax liabilities. Defendants agree to pay any approved attorneys' fees and costs to Stephan Zouras, LLP. To the extent the Court disallows, disapproves, or reduces the award of attorneys' fees and costs requested by Plaintiffs' counsel, the settlement will proceed, and this Agreement will be modified to reflect the amount of attorneys' fees and costs approved by the Court. Any amounts allocated as attorneys' fees and costs under this Agreement but not approved by the Court shall be allocated to the Plaintiffs as instructed by the Court or, in the absence of such instruction, on a pro rata basis per the allocations set forth in Exhibit A.

2.4     The Named Plaintiff shall receive, subject to Court approval, as payment for a general release of all claims, including her individual retaliation claim, against the Released Parties and in recognition of her efforts in assisting Plaintiffs' counsel with the prosecution of the Litigation, a Named Plaintiff Service Payment in the gross amount of Fifteen Thousand Dollars ($15,000.00), in addition to her settlement share. Defendants agree to pay any approved Named Plaintiff Service Payment via a check made payable to Named Plaintiff and delivered to Stephan Zouras, LLP. Defendants shall issue an IRS Form 1099 for the award of the Named Plaintiff Service Payment. Named Plaintiff shall be solely responsible for all other liabilities, assessments and penalties, if any, relating to tax payments regarding the individual payment to her, and Defendants shall bear no responsibility for such tax liabilities. To the extent the Court disallows, disapproves, or reduces the Named Plaintiff Service Payment, the settlement will proceed, and this Agreement will be modified to reflect the amount of the Named Plaintiff Service Payment approved by the Court. Any amounts allocated to the Named Plaintiff Service Payment under this Agreement but not approved by the Court shall be allocated to the Plaintiffs on a pro rata basis per the allocations set forth in Exhibit A.

2.5     The remainder of the Gross Settlement Amount, in the amount of One Hundred Thirty Thousand and Four Hundred Eighty-One and 73/100 Dollars ($130,481.73), shall be allocated among the Plaintiffs as set forth in Exhibit A, with 50% of each individual Plaintiff's share being treated as wages and paid net of all employment taxes, including federal, state and local income tax withholding and the employee share of the Federal Insurance Contributions Act ("FICA") tax, and the other 50% being treated as liquidated damages and interest. Plaintiffs' counsel will provide properly executed W-9 Forms for each Plaintiff, but in the event Plaintiffs' counsel is unable to obtain a W-9 Form from any Plaintiff within twenty-one (21) days of execution of this Agreement, 100% of that Plaintiff's share will be treated as wages and paid net of all employment taxes.  Defendants agree to pay each Plaintiff his or her settlement share via a check or checks made payable to that Plaintiff and delivered to Stephan Zouras, LLP.

2.6     It is expressly understood and agreed that the checks for the individual Plaintiff payments will become void and no longer available if not cashed within one-hundred and eighty (180) calendar days after originally issued. The amounts represented by checks remaining uncashed after the 180-day deadline for any reason will remain with Defendants. The Releases of Claims will be ineffective if a Plaintiff does not cash or otherwise negotiate a Plaintiff payment check.

2.7     Defendants shall be solely responsible for all liabilities relating to the employer portion of payroll tax liabilities. Defendants shall make withholdings from Plaintiffs' payments for the employee portion of taxes per the withholding information submitted by each Plaintiff during Plaintiff's employment.

2.8     Plaintiffs shall be solely responsible for all other liabilities, assessments and penalties, if any, relating to tax payments regarding individual payments to them and will hold

Defendants and the Released Parties harmless with respect to any such tax liability.

2.9     Plaintiffs' counsel and counsel for Defendants do not intend this Agreement to constitute legal advice relating to the tax liability of any Plaintiff.  To the extent this Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

2.10    Except for amounts to be paid pursuant to the terms of this Agreement, the Parties shall bear responsibility for their own fees, costs and expenses incurred by them or arising out of the Litigation and will not seek reimbursement thereof from any party to this Agreement or the Released Parties.

## III.    PROCESS FOR IMPLEMENTATION AND/OR APPROVAL OF SETTLEMENT

3.1     Timing of Events:

(a)     Within twenty-one (21) calendar days after this Agreement is fully executed, the Parties will file a Joint Motion for Approval of the Settlement and Dismissal of the Lawsuit with the Court. The Parties shall seek an order and final judgment entered by the Court approving the terms of this Agreement, including the Releases of Claims, payments to Plaintiffs, and payments of attorneys' fees and costs, and dismissing the action in its entirety with prejudice as to all Plaintiffs and retaining jurisdiction only for the purpose of enforcing the payment of the Gross Settlement Amount in Sections 2.3, 2.4, and 2.5 ("Approval Order").

(b)     Within fifteen (15) business days of Defendants having received properly executed W-9 Forms for each Plaintiff and Plaintiffs' counsel (subject to Sections 2.3 and 2.5), AND this Court entering a final Approval Order, Defendants will

DocuSign Envelope ID: 6321D8A5-FC62-4393-B911-B9DD13279D2F

deliver checks as specified in Exhibit A to Plaintiffs' counsel. Plaintiffs' counsel

shall distribute the checks to the Plaintiffs.

3.2        Except as provided in Paragraphs 2.3 and 2.4 above, the Parties agree that this

settlement is contingent on the Court's approval of this Agreement in its entirety. Should the Court

not approve the Agreement in its entirety, the terms of the Agreement and Releases of Claims will

be null and void. In such event, the Parties agree to continue to negotiate in good faith over an

alternative settlement.

## IV.    RELEASES OF CLAIMS

4.1        Upon the entry of the Approval Order by the Court, the Plaintiffs, voluntarily

and with the advice of counsel, fully and forever release, acquit, and discharge all claims,

obligations, demands, actions, rights, liabilities and causes of action of every nature and

description whatsoever, known or unknown, asserted or that might have been asserted by the

Plaintiffs and Plaintiffs' heirs, representatives, successors, assigns, and attorneys against Vanguard

Home Care, LLC, VHS of Illinois, Inc., Vanguard Health Systems, Inc., Tenet Healthcare

Corporation, and all of its and their past, present, and future parents, subsidiaries, companies,

divisions, officers, agents and corporate affiliates, and other current or former related entities

thereof  (which the parties agree does not include Amedisys Illinois, L.L.C.) (the "Released

Parties"), whether in common law, tort, contract or for violation of the Fair Labor Standards Act

(FLSA), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et

seq.*, the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1, *et seq.*, or any

other local, state or federal statute, ordinance, rule or regulation, arising out of, relating to, or in

connection with the nonpayment or inaccurate payment by any Released Parties of wages,

including without limitation all claims for overtime compensation, restitution and other equitable

DocuSign Envelope ID: 6321D8A5-FC62-4393-B911-B9DD13279D2F

relief, liquidated damages, compensatory damages, punitive damages, overtime wages, penalties of any nature whatsoever, and attorneys' fees and costs, whether known or unknown at any point up until this date this Agreement is executed.

4.2     Upon entry of the Approval Order by the Court approving the Service Payment to Named Plaintiff, Named Plaintiff additionally releases, on behalf of herself and her heirs, representatives, successors, assigns, and attorneys, the Released Parties from any and all claims, demands, liabilities, debts, judgments, damages, expenses, administrative actions, causes of action or suits of any kind for or by reason of any matter, cause, or thing whatsoever, whether for tort, breach of express or implied employment contract, unjust dismissal, wrongful termination or under any federal, state, or local law dealing with discrimination or retaliation based on age, race, sex, national origin, handicap, religion, disability, or any other protected class and including any and all claims for incidental or consequential damages, expenses incurred, litigation expenses, court costs, attorney fees, tort or contractual damages of any kind, and any and all other damages or statutory sums whatsoever, known or unknown, compensatory or punitive, which arose out of or are connected in any way, directly or indirectly, with any and all claims the Named Plaintiff has now, may have or may have had against the Released Parties through and including the date of execution of this Agreement. This general release of all claims includes, but is not limited to, all claims arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act, the Family and Medical Leave Act, and the Fair Labor Standards Act, each as has been or may be amended from time to time, and any other federal, state, or local laws, the common law, and any other rules or regulations governing the relationship between an employer and employee. If the Court does not approve a Service Payment to Named Plaintiff, then this general release will be null and void due to lack of

consideration.

4.3      The Releases of Claims expressly exclude claims that cannot be released by law and claims to vested benefits, workers' compensation, or unemployment benefits.

## V.    **STIPULATION OF THE PARTIES/PARTIES' AUTHORITY**

5.1      Solely for the purposes of this Agreement, and if and only if the Court issues an Approval Order on the terms requested by the Parties, the Parties stipulate and agree to vacate the dismissal without prejudice of the claims of the individuals who filed opt-in consents to sue pursuant to 29 U.S.C. § 216(b) so that the claims of all Plaintiffs may be settled on a collective basis. (*See* ECF No. 73.) Should the settlement not become final, said stipulation to vacate the dismissal without prejudice of the claims of individuals who filed opt-in consents to sue, shall be void *nunc pro tunc* and of no effect as if said stipulation was never entered into.

5.2      The signatories below represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof. Based on the plain language of the "Consent to Become Party Plaintiff," Named Plaintiff and Plaintiffs' counsel represent that they have the authority to settle this matter on behalf of all Plaintiffs, who signed individual retainer agreements with Plaintiffs' counsel and/or signed the Consent to Become Party Plaintiff and agreed to the join the lawsuit and designated "the Class Representative as my agent to make decisions on my behalf concerning this lawsuit, the method and manner of conducting the lawsuit . . . and all other matters pertaining to this lawsuit."

5.3      All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations, which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

## VI.    COOPERATION BETWEEN THE PARTIES/SEVERABILITY

6.1       The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

6.2       The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

## VII.   DISPUTES RELATED TO THE SETTLEMENT AGREEMENT

7.1       Any disputes related to this Agreement that arise prior to the entry of the Approval Order shall be referred to this Court.

## VIII.  WAIVER OF RIGHT TO APPEAL

8.1       Provided that the Approval Order and Judgment are consistent with the terms and conditions of this Agreement in all material respects, the Plaintiffs, Plaintiffs' counsel, and Defendants all hereby waive any and all rights to appeal from the Approval Order and Judgment, including all rights to any post-judgment proceedings, such as a motion to vacate or set-aside judgment, a motion for a new trial, and any extraordinary writ, and the Approval Order and Judgment will become final and non-appealable at the time they are entered. The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.

## IX.    NO ASSIGNMENT

9.1       The Parties and Plaintiffs' counsel represent, covenant and warrant that they

have not directly or indirectly, assigned, transferred, encumbered or purported to assign, transfer or encumber to any person or entity any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

## X.     ENTIRE AGREEMENT

10.1      This Agreement, together with its exhibit, constitutes the entire agreement between the Parties relating to any and all matters addressed in the Agreement (including settlement of the Litigation), and all prior or contemporaneous negotiations, agreements, understandings, representations, and statements, whether oral or written and whether by one of the Parties or such Parties' legal counsel, shall be deemed merged into this Agreement. No rights hereunder may be waived or modified except in a writing signed by all Parties and approved by the Court.

## XI.     BINDING EFFECT

11.1      This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

## XII.     ARMS' LENGTH TRANSACTION; MATERIALITY OF TERMS

12.1      The Parties agree that the terms and conditions of this Agreement are the result of intensive, arms'-length negotiations between the Parties. All terms and conditions of this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

## XIII.     CONSTRUCTION

13.1      The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be,

construed against any Party by virtue of draftsmanship.

## XIV.  HEADINGS

14.1       Paragraph titles and headings are inserted as a matter of convenience and for reference only, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions. Each term of this Agreement is contractual and not merely a recital.

## XV.  GOVERNING LAW

15.1       This Agreement shall in all respects be construed, enforced and governed by and under the laws of the State of Illinois, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

## XVI.  MODIFICATION

16.1       This Agreement may not be changed, altered, or modified, except in writing and signed by counsel for the Parties, and approved by the Court. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement.

## XVII.  VOIDING THE AGREEMENT

17.1       If the Effective Date does not occur, the Court does not grant the Approval Order and Judgment, or this Agreement is otherwise nullified pursuant to its terms, this Agreement shall be null and void, and the agreements described above and elsewhere in this Agreement shall be of no effect and inadmissible in this or any other action or proceeding.

## XVIII. COUNTERPARTS

18.1       This Agreement may be executed in multiple counterparts with each

DocuSign Envelope ID: 6321D8A5-FC62-4393-B911-B9DD13279D2F

constituting an original.

## XIX.  FACSIMILE AND ELECTRONIC SIGNATURES

19.1    Any signature made and transmitted by facsimile or other electronic format for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or electronic format.

## XX.    NO ADMISSION OF LIABILITY

20.1    By entering into this Agreement, Defendants admit no liability of any kind, and Defendants expressly deny any liability or wrongdoing. Accordingly, the Parties agree that none of them has prevailed nor shall this Agreement be construed as evidence that any party has prevailed in this matter.

## XXI.   NAMED PLAINTIFF CERTIFICATION

21.1    Named Plaintiff hereby certifies that she:

(a)    Has read entirely and signed this Agreement voluntarily and knowingly in exchange for the consideration described herein, which the Named Plaintiff acknowledges is adequate and satisfactory;

(b)    Has been advised by Plaintiffs' counsel and has consulted with Plaintiffs' counsel before signing this Agreement;

(c)    Has been given adequate time to review and consider this Agreement and to decide whether to sign it; and

(d)    Neither Vanguard nor any of the Released Parties have made any representations to the Named Plaintiff concerning the terms or effects of this Agreement other than those contained herein.

DocuSign Envelope ID: 6321D8A5-FC62-4393-B911-B9DD13279D2F

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

APPROVED BY DEFENDANTS:

Dated: _2/26/19_

By: VHS Illinois, Inc.
Name: Douglas Rabe
Title: Vice President

APPROVED BY THE NAMED PLAINTIFF:

Dated: _2/24/2019_

Scharmaine Davis
Scharmaine Davis

| Name | Job Title | Opt-In Date | Start Date | End Date | Hourly Rate | Weeks | Visits | Minimum Payment | Additional Allocation | Total Allocation |
|---|---|---|---|---|---|---|---|---|---|---|
| Scharmaine Davis | Home Health RN | 7/15/2016 | 3/24/2014 | 5/4/2016 | $ 33.85 | 111 | 2,023 | $ 250.00 | $ 1,127.89 | $ 1,377.89 |
| Leonore Augustine (prev. Mlynar) | Home Health RN | 7/20/2016 | 7/15/2013 | 2/14/2017 | $ 37.13 | 188 | 5,982 | $ 250.00 | $ 15,470.63 | $ 15,720.63 |
| Nora Barry (prev. Fleming) | Home Health RN | 6/19/2018 | 7/15/2013 | 5/1/2017 | $ 35.39 | 198 | 4,106 | $ 250.00 | $ 1,075.89 | $ 1,325.89 |
| Darlene Bingham | HH Intake Coordinator | 7/15/2016 | 7/15/2013 | 3/23/2014 | $ 34.00 | 36 | 0 | $ 250.00 | $ - | $ 250.00 |
| Darlene Boron Ris | Home Health RN | 6/24/2018 | 7/15/2013 | 5/1/2017 | $ 30.62 | 198 | 4,046 | $ 250.00 | $ 96.83 | $ 346.83 |
| Jaison Chahwala | Home Health RN | 6/19/2018 | 7/15/2013 | 5/1/2017 | $ 32.28 | 198 | 6,250 | $ 250.00 | $ 9,975.31 | $ 10,225.31 |
| Grant Chessman | Home Health RN | 7/27/2018 | 7/15/2013 | 6/13/2014 | $ 35.71 | 48 | 873 | $ 250.00 | $ 1,069.77 | $ 1,319.77 |
| Emily Clarke | Home Health RN | 8/10/2016 | 7/15/2013 | 5/1/2017 | $ 29.75 | 198 | 4,035 | $ 250.00 | $ 2,727.93 | $ 2,977.93 |
| Ninetta Fiala | Physical Therapist | 7/27/2018 | 7/15/2013 | 5/1/2017 | $ 43.52 | 198 | 5,330 | $ 250.00 | $ 8,972.92 | $ 9,222.92 |
| Danielle Finnerty | Home Health RN | 6/27/2018 | 4/21/2014 | 2/21/2015 | $ 33.50 | 44 | 375 | $ 250.00 | $ - | $ 250.00 |
| John Gearhart | Physical Therapist | 6/27/2018 | 7/15/2013 | 4/27/2017 | $ 44.74 | 198 | 5,057 | $ 250.00 | $ 7,040.48 | $ 7,290.48 |
| Rosemary Kirchner | Occupational Therapist | 8/4/2016 | 7/15/2013 | 5/1/2017 | $ 40.72 | 198 | 8,906 | $ 250.00 | $ 41,248.89 | $ 41,498.89 |
| Deborah Krukowski | Home Health RN | 8/15/2016 | 7/15/2013 | 5/1/2017 | $ 38.29 | 198 | 4,994 | $ 250.00 | $ 7,516.49 | $ 7,766.49 |
| Jacqueline Maberry | Home Health RN | 7/20/2016 | 7/15/2013 | 12/2/2015 | $ 36.43 | 125 | 992 | $ 250.00 | $ 170.38 | $ 420.38 |
| Annamarie Martin | Home Health RN | 7/20/2016 | 7/15/2013 | 2/12/2014 | $ 34.04 | 31 | 604 | $ 250.00 | $ 722.01 | $ 972.01 |
| Edward Morone | Physical Therapist | 8/2/2018 | 4/6/2015 | 7/22/2015 | $ 40.00 | 16 | 327 | $ 250.00 | $ 214.33 | $ 464.33 |
| Coreen Reavy | Home Health RN | 7/20/2016 | 7/15/2013 | 4/28/2014 | $ 35.32 | 41 | 835 | $ 250.00 | $ 409.73 | $ 659.73 |
| Richard Signe | Home Health RN | 9/21/2016 | 7/15/2013 | 5/1/2017 | $ 35.24 | 198 | 7,421 | $ 250.00 | $ 26,286.80 | $ 26,536.80 |
| Ana Vaia (prev. Cardona) | Home Health RN | 7/20/2016 | 7/15/2013 | 5/1/2017 | $ 34.48 | 198 | 1,378 | $ 250.00 | $ 1,605.45 | $ 1,855.45 |
| | | | | **Totals** | | **2620** | **63,534** | **$ 4,750.00** | **$ 125,731.73** | **$ 130,481.73** |